## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISON

| | |
|---|---|
| DEAFRED HARDMAN, | ) CASE NO. 1:20-CV-00576-SO |
| | ) |
| Plaintiff, | ) JUDGE SOLOMON OLIVER, JR. |
| | ) UNITED STATES DISTRICT JUDGE |
| v. | ) |
| | ) MAGISTRATE JUDGE |
| ADULT PAROLE AUTHORITY OF OHIO, | ) CARMEN E. HENDERSON |
| | ) |
| | ) **REPORT AND RECOMMENDATION** |
| Defendant, | ) |

## I.    Introduction

Petitioner, Deafred Hardman, seeks a writ of habeas corpus under 28 U.S.C. § 2254. Hardman is currently under Adult Parole Authority of Ohio supervision for compelling prostitution and having unlawful sexual conduct with a minor. Hardman asserts six grounds for relief. (ECF Nos. 1, 12). This matter was referred to me under Local Rule 72.2 to prepare a report and recommendation on Hardman's petition and other case-dispositive motions. Because Hardman's claims are either meritless or procedurally defaulted, I recommend that the Court deny his petition in its entirety and not grant him a certificate of appealability.

## II.    Relevant Factual History

The Eighth District Ohio Court of Appeals set forth the following facts on direct appeal:

> The evidence showed that the victim was 15 years old at the time of the offenses. She had run away from home and met people who were friends with Hardman. She used a fake name and told everyone that she was 20 years old. What followed was a two-week odyssey where

the victim consumed drugs and alcohol and engaged in sexual conduct with numerous people, including Hardman. Hardman listed the victim on a website where she offered massage and "escort" services. He created an ad for her services, describing her as "five-three, 150 pounds." Hardman told the victim to take pictures of herself, but rejected them, telling her "they needed to be more sexy." She took additional pictures of herself wearing only a bra and underwear. . . .

The victim testified that Hardman not only created the ad for her escort services, he took her to a motel room where a man appeared for her services. She testified that Hardman told her to "make sure they put the money on the dresser, on the bed. You grab it and put it up and just do what they want." After the man left, Hardman asked the victim for the money, taking more than half of it.

*Ohio v. Hardman*, No. 105810, 2018 WL 2411184, at *1–2 (Ohio Ct. App. May 24, 2018).

## III.  Relevant State Procedural History

### A.  Indictment

On June 12, 2014, Hardman was indicted for:

One Count of Compelling Prostitution in violation of Ohio Rev. Code. § 2907.21(A)(2)(a), a felony in the third degree

One Count of Unlawful Sexual Conduct with a Minor in violation of Ohio Rev. Code § 2907.04(A), a felony in the third degree

(ECF No. 10-1, PageID #: 275).

### B.  First Jury Trial and Verdict

At Hardman's first jury trial, Hardman testified in his own defense. During the trial, Hardman chose to represent himself. (ECF No. 10-1, PageID #: 277). Hardman signed a waiver of his right to counsel (ECF No. 10-1, PageID #: 277–81) and his appointed counsel was excused from the proceedings (ECF No. 10-1, PageID #: 282). The jury found Hardman guilty of both counts. (ECF No. 10-1, PageID #: 283). The court imposed two consecutive 18-month prison terms

and a mandatory 5 years of post-release control. (ECF No. 10-1, PageID #: 285). The court classified Hardman as a Tier II sex offender. (ECF No. 10-1, PageID #: 286).

### C.    First Direct Appeal

On appeal, represented by counsel, Hardman raised three assignments of error:

> 1. Dealfred Hardman's conviction for unlawful sexual conduct with a minor is not supported by legally sufficient evidence as required by state and federal due process.
>
> 2. The trial court committed reversible error and violated Hardman's state and federal due process rights and right to counsel when it sua sponte raised the idea of self-representation mid-trial, when its counsel waiver colloquy included a reference to the appointment of standby counsel, when it delegated the decision on standby counsel to Hardman's discharged defense counsel when it did not appoint standby counsel, and when it failed to grant any continuance despite Hardman never having seen discovery prior to trial and despite pro se representation beginning in the middle of the victim's testimony.
>
> 3. Dealfred Hardman's convictions for unlawful sexual conduct with a minor and compelling prostitution are against the manifest weight of the evidence.

(ECF No. 10-1, PageID #: 301). On December 10, 2015, the Eighth District Court of Appeals of Ohio reversed and remanded the case for a new trial after concluding that the trial court deprived Hardman of his Sixth Amendment right to counsel by failing to offer him standby counsel. (ECF No. 10-1, PageID #: 387, 392).

Hardman then moved for reconsideration and for rehearing *en banc*. (ECF No. 10-1, PageID #: 393). Hardman urged the court to conduct a full merits review of his sufficiency of the evidence claim, hoping to bar further prosecution. (ECF No. 10-1, PageID #: 393–95). He also moved to certify two conflicts to the Ohio Supreme Court. (ECF No. 10-1, PageID #: 403–04). The court of appeals granted Hardman's motion for reconsideration on February 11, 2016. (ECF No. 10-1, PageID #: 422). The court again reversed the trial court's judgment and remanded the

case for a new trial. (ECF No. 10-1, PageID #: 442). The court denied Hardman's motion to certify a conflict and request for rehearing *en banc*. (ECF No. 10-1, PageID #: 444–45).

### D.     First Appeal to the Ohio Supreme Court

On March 16, 2016, Hardman timely filed a pro se appeal notice in the Ohio Supreme Court. (ECF No. 10-1, PageID #: 447). The State of Ohio cross appealed. On May 18, 2016, the Supreme Court of Ohio declined to accept jurisdiction of the appeal and cross-appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). (ECF No. 10-1, PageID #: 499).

### E.     Second Jury Trial and Verdict

On April 19, 2017, the trial court heard pretrial motions. Hardman represented himself with the support of standby counsel. (ECF No. 10-1, PageID #: 506). Before the trial, Hardman filed a motion in limine. Hardman asked that the Court preclude the State from introducing past testimony and exhibits Hardman produced at his first trial. (ECF No. 10-2, PageID #: 764). The trial court treated the motion as a pending motion in limine and agreed to revisit when Hardman objected throughout the trial. (ECF No. 10-2, PageID #: 772).

On April 20, 2017, Hardman's jury trial began. At the trial, multiple witnesses testified about a Backpage advertisement. Backpage is a website that advertises items for sale, known to law enforcement for advertising prostitution and escort services. (ECF No. 10-3, PageID #: 1249). In this case, a Backpage advertisement was posted offering the services of the victim. One of the detectives on the case testified that the number listed on the advertisement matched Hardman's number. (ECF No. 10-3, PageID #: 1247). To show that the number belonged to Hardman, the State introduced Hardman's dental records which included his number. (ECF No. 10-3, PageID #: 1246–47). Hardman objected to the use of the dental records. (ECF No. 10-3, PageID #: 1246). He argued that his attorney introduced the records in the first trial, and he chose not to introduce them

in the second one. (ECF No. 10-3, PageID #: 1266). Hardman asserted that the State agreed not to introduce evidence from the first trial, and he was prejudiced by its use. (ECF No. 10-3, PageID #: 1266). The State responded that they agreed not to use his previous testimony but planned on using the same evidence from the first trial. (ECF No. 10-3, PageID #: 1267). The Court overruled Hardman's objection. (ECF No. 10-3, PageID #: 1268).

At the end of the first day, Hardman informed the court he had been having trouble securing one of his witnesses, Charles Bullard, as there was a no contact order between Hardman and Bullard. (ECF No. 10-3, PageID #: 1192–93). Hardman had issued a subpoena but was not sure if Bullard would be there to testify the next day. The court told Hardman that the court could issue a material witness warrant if it was appropriate. (ECF No. 10-3, PageID #: 1194). Hardman did not ask for a material witness warrant at that time. The next day, a Friday, Hardman again informed the court that he was unable to procure Bullard. (ECF No. 10-3, PageID #: 1201). The court issued a material witness warrant, modified the no contact order, and gave Hardman until Monday to procure Bullard. (ECF No. 10-3, PageID #: 1215–16). The Court allowed the jury to leave early, around noon, to allow Hardman the weekend to find his witness. (ECF No. 10-3, PageID #: 1284). On Monday, Hardman informed the Court that the witness did not want to come to the courthouse because of some legal issues. (ECF No. 10-4, PageID #: 1297). The Court gave Hardman two hours to find his witness. (ECF No. 10-4, PageID #: 1297). The witness did not appear.

The jury found Hardman guilty of both counts charged in the indictment. (ECF No. 10-1, PageID #: 506). The court imposed a sentence of 18 months on each count, to be served consecutively, and ordered 5 years of mandatory post-release control. (ECF No. 10-1, PageID #: 507–08). The Court also classified Hardman as a Tier II sex offender. (ECF No. 10-1, PageID #: 507).

## F.     Second Direct Appeal

On appeal, represented by counsel, Hardman raised four assignments of error:

> I. Appellant's convictions are not supported by legally sufficient evidence as required by law
>
> II. Appellant's convictions are against the manifest weight of the evidence
>
> III. The trial court erred when it violated Appellant's right to compulsory process by placing the burden on appellant to secure the appearance of a material witness
>
> IV. The trial court erred when it overruled Appellant's objection to the use of state's Exhibit #3 (Dental Records) as it violated the discovery provisions of Crim. R. 16

(ECF No. 10-1, PageID #: 523). On May 24, 2018, the Eighth District Court of Appeals of Ohio affirmed the judgment of the trial court. (ECF No. 10-1, PageID #: 562).

## G.     Second Appeal to the Ohio Supreme Court

On July 2, 2018, Hardman timely filed a pro se appeal notice in the Ohio Supreme Court. (ECF No. 10-1, PageID #: 573–74). Hardman's memorandum in support of jurisdiction raised the following propositions of law:

> 1. Whether the trial court erred when it overruled Appellant's objection to the use of State's Exhibit #3 as it violated the discovery provisions of Crim. R. 16(A) and Rule 16(B)(3)
>
> 2. Does a logical connection with consequential facts if few or anyone knows about make a witness material, and favorable?

(ECF No. 10-1, PageID #: 576). On August 29, 2018, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). (ECF No. 10-1, PageID #: 604).

## H.     Release from Prison

On April 10, 2018, the Ohio Adult Parole Authority granted Hardman supervised release. (ECF No. 10-1, PageID #: 605). He was released on July 28, 2018. (ECF No. 10-1, PageID #: 605).

## I.     Application for Reopening

On August 16, 2018, Hardman applied to reopen his appeal. (ECF No. 10-1, PageID #: 607). He argued that appellate counsel was ineffective for failing to present the following assignments of error:

> 1. The state committed Prosecutorial Misconduct by deliberately violating Appellant's 5th, 6th, and 14th Amendments of the U.S. Constitution and admitting inadmissible Hearsay evidence to the jury only to withdraw that evidence once inadmissible hearsay testimony had been elicited regarding the same.
>
> 2. The trial court err[ed] when it overruled Appellant's Motion in Limine and objection to state Exhibit (2) The Backpage Advertisement as it violated Evid. 902, 403(a), 901, R.C. 2921.12, R.C. 2945.82 and Evid. Rule 1003.
>
> 3. Whether the trial judge committed structural error by being Bias[ed] toward the Appellant?

(ECF No. 10-1, PageID #: 609, 612–13). On December 17, 2018, the Eighth District Court of Appeals denied Hardman's application for reopening. (ECF No. 10-1, PageID #: 627). On January 29, 2019, Hardman appealed to the Ohio Supreme Court. (ECF No. 10-1, PageID #: 637). He raised three propositions of law in support of jurisdiction:

> 1. Whether the state commit[ed] Prosecutorial Misconduct by deliberately violating Appellant's 4th,5th,6th and 14th Amendments of the U.S. Constitution and admitting inadmissible hearsay evidence to the jury only to withdraw that evidence once inadmissible hearsay testimony had been elicited regarding the same?
>
> 2. Whether the trial court committed prejudicial error when it overruled Appellant's Motion in Limine and objection to state

exhibit(2) The Backpage Advertisement as it violated Evid.R.902, Evid.R.403(a) O.R.C.2921.12., O.R.C.13.42 and Evid. R.1003[sic]?

3. Whether the trial judge committed structural error by being bias[ed] toward the appellant?

(ECF No. 10-1, PageID #: 640). On March 20, 2019, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). (ECF No. 10-1, PageID #: 669).

###   J.   Motion for Leave to File Delayed Motion for New Trial

On March 16, 2020, Hardman filed a motion for leave to file a delayed motion for a new trial pursuant to Crim. R. 33(A)(6). (ECF No. 10-1, PageID #: 670). He alleged that he found newly discovered evidence. He stated that he found the cellphone that was allegedly used to create the advertisement for the victim's prostitution. He stated that the "newly discovered evidence no doubt would have changed the outcome of the trial as the phone did not have the capability to access the internet nor upload photo[]s." (ECF No. 10-1, PageID #: 673). On March 20, 2020, the trial court summarily denied the motion. (ECF No. 10-2, PageID #: 675).

## IV.   Federal Habeas Corpus Petition

On March 17, 2020, Hardman petitioned pro se that this Court issue a writ of habeas corpus. (ECF No. 1). Hardman asserted six grounds for relief:[1]

> **Ground One**: The Petitioner is being held in Violation of his Fifth Amendment privilege against compelled self-incrimination of derivative evidence.
> **Supporting Facts**: The state of Ohio appealed the 8th District decision of the case in chief to the Ohio Supreme Court which declined to hear the state's appeal. The prosecutor in his brief of EXPLANATION OF WHY THIS FELONY CASE INVOLVES A SUBSTANTIAL CONSTITUTIONAL QUESTION OR ISSUE OF GREAT PUBLIC OR GENERAL INTEREST to the Ohio Supreme Court took notice of the potential failures that implies that

---

[1] Hardman incorrectly numbered his grounds for relief. The Court kept Hardman's numbering for consistency.

prejudice can be established when the trial court made its decision not to Appoint standby counsel for Petitioner.

Fact 1: The Petitioner had two trials due to the trial court not appointing standby counsel in Petitioner first trial.

Fact 2: The Petitioner did not testify in his second trial.

Fact 3: The Petitioner dental records were derivative evidence.

Fact 4: The State of Ohio and the trial judge was aware Defendant was not going to testify before trial.

**Ground One**: Under the Sixth Amendment exclusion where the police elicit a statement from an accused without counsel, that statement must be excluded.

**Supporting Facts**: this was Hardman's second trial. On Direct appeal, the 8th District Court of Appeals found the trial court violated Har[d]man's Sixth Amendment right to counsel, by not affording him standby counsel. The State of Ohio interfered with the right to counsel of hardman by obtaining Evidence and using that evidence in its case and chief that it could have only obtained during the 6th Amendment violation.

**Ground Two:** The Respondent is being held in Violation of his 6th Amendment right to standby counsel statements and evidence obtained by Violation of his 6th Amendment.

**Supporting Facts:** (1) Hearsay evidence was heard by jury over objection by use of Petitioner Dental Records by state of Ohio and Det. for the State of Ohio.

(2) The right to self-representation to make one's own defense personally is necessary and the right to defend is given directly to the accused.

**Ground Three:** The Petitioner has been denied due process and equal protection of law by the 14th Amendment. Once the Eighth District Court of Appeal ordered the new trial, matters stood in the same position the did before any trial had been conducted.

**Supporting Facts:** Fact 1: Once the Eight District court of Appeals ordered the new trial the record of the former trial has been annulled and expunged by the judgement of the appellate court, and matters stood as though they had been; and the indictment is left to stand as to the crime of which Petitioner had been charged as though there had been no trial.

Fact 2: To punish a person because he has done what the law plainly allows him to do is due process violation of the most basic sort.

Fact 3: Upon release after the Eighth District Court of Appeal Petitioner had to repost $10,000 bail.

**Ground Three:** The Petitioner is being held in Violation of his 6th Amendment right to compulsory process. The Sixth Amendment of the U.S. Constitution provides a defendant with the right to have "compulsory process" for obtaining witnesses in his or her favor.
    **Supporting Facts:** Fact 1: The trial judge *sua sponte* raised the idea of suggesting a material warrant issued, a material witness warrant and forced the Defendant to go secure the material witness and gave Defendant just 2 hours to get the witness.
Fact 2: The witness was not obtainable.

**Ground Four:** The Petitioner he's being held in violation of the right to a fair and impartial judge.
    **Supporting Facts:** Fact 1: The trial judge sua sponte in the first trial raised the idea of self-representation mid-trial, in Petitioners first trial, also sua sponte raised the idea of ordering a material witness warrant.
Fact 2: Failed to grant Petitioner any continuance despite knowing Hardman never seeing discovery prior to first trial.
Fact 3: Failed to grant any continuance when pro se representation was ordered to begin in the middle of the victim's testimony. During the first trial.
Fact 4: All together the Eighth District Court of Appeal gave 6 different reasons before the[y] agreed that the trial court violated Hardman's right to counsel, and made a note that they found it troubling that the trial court violated Hardman's right to counsel.
Fact 5: The trial judge asked the Petitioner (Hardman) if he thought "*the Martians came and plucked Mr. Bullard off the earth.*"

(ECF No. 1). Respondent filed the return of writ on November 17, 2020. (ECF No. 10). Hardman

timely filed his traverse. (ECF No. 12).

## V.    **Legal Standards**

### A.    **Jurisdiction**

District courts may entertain an application for a writ of habeas corpus "on behalf of a

person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2254(b). A state prisoner

may file a § 2254 petition in the "district court for the district wherein such person is in custody or

in the district court for the district within which the State court was held which convicted and

sentenced him." 28 U.S.C. § 2241(d). The Cuyahoga County Court of Common Pleas sentenced

Hardman, and Cuyahoga County is within this Court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Hardman's § 2254 petition.

### B.      Cognizable Federal Claim

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991). Thus, "errors in application of state law . . . are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998) (citations omitted).

### C.      AEDPA Standard of Review

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), provides in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (alterations in original) (quoting *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (citations omitted). "The unreasonable application clause requires the state

court decision to be more than incorrect or erroneous"—it must be "objectively unreasonable." *Id.* (citations omitted).

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state-court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state-court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . . . determination." *Rice v. Collins*, 546 U.S. 333, 341–42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet . . . because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Id.* at 102 (citations omitted). "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents" and "goes no further." *Id.* Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

## VI.    Discussion

### A.    Ground 1: Fifth Amendment Privilege

In his first ground for relief, Hardman argues the trial court violated his Fifth Amendment right against compelled self-incrimination of derivative evidence. Hardman asserts that the State's use of his dental records—which his defense counsel produced in the first trial—was improper because he was granted a new trial and he chose not to introduce them. Respondent argues that Hardman procedurally defaulted this claim because he did not fairly present it on direct appeal. Hardman responds that "he has shown cause, and is actually innocent." (ECF No. 12 at 15).

The Court agrees that Hardman's claim is procedurally defaulted because this issue was not properly exhausted and cannot be brought now. "[T]he doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998) (citations omitted). While Hardman did appeal the State's use of the dental records, he did not argue that the use was a violation of his Fifth Amendment rights—he instead argued it was a violation of discovery rules. (ECF No. 10-1, PageID #: 582–86). In his application for reopening, Hardman stated that his appellate counsel was ineffective for failing to include an assignment of error arguing that the State committed prosecutorial misconduct by deliberately violating his Fourth, Fifth, Sixth, and Fourteenth Amendment rights when it introduced the dental records. However, a "Rule 26(B) application 'based on ineffective assistance cannot function to preserve' the underlying substantive claim" such that it will not be found to be procedurally defaulted." *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008). Thus, his application for reopening did not preserve the issue. Because Hardman

cannot now bring this claim to the state courts, the claim is procedurally defaulted.[2] *See Adams v. Burton*, No. 16-1476, 2016 WL 6610219, at *2 (6th Cir. Nov. 8, 2016) ("When a petitioner has failed to exhaust his state remedies, and when he can no longer do so under state law, his habeas claim is procedurally defaulted." (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999))).

"A federal habeas court need not review a procedurally defaulted claim unless the petitioner can show either cause for the default and actual prejudice from the alleged constitutional violation, or that failure to consider the claim would result in a 'fundamental miscarriage of justice[.]'" *Id.* (quoting *Coleman v. Thompson*, 501 U.S. 722, 750–51 (1991)). "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). To demonstrate actual innocence, "a petitioner must come forward with 'new reliable evidence— whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Allen v. Harry*, 497 F. App'x 473, 480 (6th Cir. 2012) (citations omitted). The reviewing court must consider the new evidence in light of "'all the evidence,' old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial.'" *House v. Bell*, 547 U.S. 518, 538 (2006) (internal citations omitted). The "petitioner must demonstrate that 'it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.'" *Allen*, 497 F. App'x at 480 (citations omitted).

---

[2] Ohio App. R. 4(A)(1) gives 30 days to appeal from a final order. Ohio Rev. Code. § 2953.21(A)(2) allows 365 days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment to petition for postconviction relief. Ohio Criminal Rule 26(B) provides 90 days from journalization of the appellate judgment to apply for a reopening of the case. Both dates have passed in this case.

Hardman claims he is actually innocent. In support of this claim, he asserts that he found the cell phone associated with the phone number listed on the Backpage advertisement and the dental records—not produced at trial because it could not be found. He claims that the cell phone does not have the capability to access the internet or upload the photos. This allegedly shows his innocence because his phone could not haven then uploaded the Backpage advertisement. Even assuming this is true, however, the Court does not find that this is evidence of actual innocence.

The Court concludes that a reasonable juror most likely would have convicted Hardman even in light of the new evidence. Compelling prostitution under Ohio Rev. Code. § 2907.21(A)(2)(a) criminalizes inducing, procuring, encouraging, soliciting, requesting, or otherwise facilitating "a minor to engage in sexual activity for hire, whether or not the offender knows the age of the minor." Even if the newly discovered phone did not upload the advertisement, there is still sufficient evidence supporting Hardman's conviction. The victim, a minor at the time of the incident, testified that Hardman instructed her to take "sexy" photos of herself in her bra and underwear. (ECF No. 10-3, PageID #: 1122). These photos were then found on a Backpage advertisement with Hardman's cell phone number listed as the number to call for inquiries. Another witness testified that he heard Hardman and the victim talking about the Backpage advertisement. (ECF No. 10-3, PageID #: 1079). The victim testified that Hardman answered the calls regarding the ad. (ECF No. 10-3, PageID #: 1136). In addition to the advertisement, the State introduced records of Hardman paying for a room at the Motel 6. The victim testified that Hardman took her to the Motel 6, paid for a room, brought men to the room for the victim to have sex with, instructed her to do what the men wanted and ensure they left her money, and then took over half of the money the victim earned. (ECF No. 10-3, PageID #: 1161–62); (ECF No. 10-3, PageID #: 1125). She also testified that Hardman drove her to another location to have sex with another man

for money. (ECF No. 10-3, PageID #: 1127). This is sufficient evidence to satisfy the Court that even if the phone could not upload the ad, it is not more likely than not that no reasonable juror would have convicted Hardman of compelling prostitution in light of the new evidence. Thus, Hardman did not meet the actual innocence standard.

Notably, the new evidence does not affect Hardman's conviction for having unlawful sexual contact with a minor as the Backpage advertisement and cell phone have nothing to do with the conviction. Hardman did not provide any new evidence demonstrating that he did not have sex with the minor victim. *See Garrison v. Wolfenbarger*, No. Civ. 04CV71234DT, 2005 WL 2173630, at *6 (E.D. Mich. Sept. 2, 2005) ("Petitioner has not submitted any new and credible evidence of actual innocence. Consequently, a miscarriage of justice will not occur as a result of this Court's failure to adjudicate the substantive merits of Petitioner's claim.").

Alternatively, Hardman states that he has shown cause for the procedural default. While he has not specifically identified the cause, the Court interprets the discussion of his appellate counsel's deficiencies in the facts section of his traverse as arguing his appellate counsel was ineffective for failing to bring his various objections to the admission of his dental records on direct appeal. (ECF No. 12 at 6–8). "[I]n certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review in state court" will establish cause. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citations omitted). "To constitute cause, that ineffectiveness must itself amount to a violation of the Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted." *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005). Hardman argued that his appellate counsel was ineffective for failing to raise his constitutional issues with the use of his dental records in his motion to reopen his appeal and his appeal to the Supreme Court

of Ohio.[3] Accordingly, the Court will address whether his counsel's failure to raise his constitutional issues on direct appeal satisfies the "cause" requirement necessary to excuse his procedural default. To establish such a claim, the petitioner must demonstrate that his attorney on direct appeal made such serious errors that (1) he was not functioning as the "counsel" guaranteed by the Sixth Amendment; and (2) such deficient performance prejudiced the defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).

"To evaluate a claim of ineffective assistance of appellate counsel, we assess the strength of the claim appellate counsel failed to raise." *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008), *as amended on denial of reh'g and reh'g en banc* (Feb. 25, 2009). "Counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir.2004). "If there is a reasonable probability that [the defendant] would have prevailed on appeal had the claim been raised, we can then consider whether the claim's merit was so compelling that appellate counsel's failure to raise it amounted to ineffective assistance of appellate counsel." *Id.* at 700.

Here, Hardman cannot establish a reasonable probability that he would have prevailed on appeal had any of his constitutional claims been raised.[4] Hardman complains of the state's use of

---

[3] Respondent argues that the ineffective assistance of counsel claim is procedurally defaulted because the appellate court held that it was barred by the doctrine of res judicata. However, the Court interprets the appellate court's decision as concluding that Hardman could not show prejudice because the court had already concluded that there was nothing wrong with the use of the dental records. *See Ohio v. Hardman*, No. 105810, 2018 WL 6721105, at *2 (Ohio Ct. App. Dec. 17, 2018) ("Hardman has failed to establish any prejudice through his first proposed assignment of error.").

[4] For convenience, the Court considers here whether appellate counsel's failure to bring any of Hardman's claims relating to the dental records amounted to ineffective assistance of counsel as cause will be relevant to multiple grounds for relief below.

his dental records that were produced by his attorney in the first trial. He argues that he did not introduce the records in the second trial so the records should not have been used by the state. The Court concludes that the use of the records was not a constitutional violation.[5] First, the use of the dental records was not a violation of the Fourth Amendment because there was no illegal search or seizure that led to the records. *See* U.S. Const. amend. IV (protecting the people from unreasonable searches and seizures). Second, it was not a violation of the Fifth Amendment because the records were not derived from Hardman's compelled testimony. Instead, they were introduced as an exhibit by his trial counsel in the first trial. The state never stated they would not use the exhibits from the first trial and the trial court never granted that part of Hardman's motion in limine. Finally, the use of the dental records was not a violation of the Sixth Amendment right to counsel because Hardman had an attorney in the first trial who initially introduced the records— which Hardman does not suggest constituted ineffective assistance of counsel—and he knowingly and voluntarily—despite many warnings against it—chose to proceed pro se in the second trial. *See United States v. Bankston*, 820 F.3d 215, 223 (6th Cir. 2016) ("[I]n order to represent himself, the accused must knowingly and intelligently forgo [his Sixth Amendment right to counsel]." (citations and quotation marks omitted)). Hardman is, therefore, unable to show that his appellate counsel's failure to bring these claims caused him any prejudice. Thus, Hardman's attempt to show cause and prejudice fails. Accordingly, Hardman's first ground for relief is procedurally defaulted.

B.      **Ground 1: Sixth Amendment Exclusion**

---

[5] The Court considers only Fourth, Fifth, and Sixth Amendment violations because these are the only issues Hardman argued his counsel should have brought. (ECF No. 12 at 7–9). He did not provide any argument that his counsel should have brought a Fourteenth Amendment violation argument. Thus, that argument is deemed waived.

In his second ground for relief—incorrectly labeled "Ground 1"—Hardman argues that his Sixth Amendment right to counsel was violated by using the dental records used in his first trial. Respondent asserts that this claim is procedurally defaulted because Hardman failed to bring the claim on direct appeal. The Court agrees. Hardman did not exhaust this issue before the state courts. On direct appeal, Hardman argued that the use of the dental records violated the discovery provisions of Criminal Rule 16. As noted earlier, the inclusion of the issue on reopening does not preserve the claim for merits review because it was couched as an ineffective assistance of counsel claim. Because the time has passed for Hardman to exhaust this claim, this ground for relief is procedurally defaulted. As discussed above, Hardman does not meet an exception that would allow for the Court to review this issue despite the default. Thus, the Court will not review the merits of Hardman's second ground for relief.

## C. Ground 2: Sixth Amendment Right to Standby Counsel

In his third ground for relief—incorrectly labeled "Ground 2"—Hardman argues that his Sixth Amendment right to standby counsel was violated by the State's use of the dental records. Respondent argues that the claim is procedurally defaulted. The Court agrees. Hardman did not exhaust this issue before the state courts. On direct appeal, Hardman argued that the use of the dental records violated the discovery provisions of Criminal Rule 16. Again, the inclusion of the issue on reopening does not preserve the claim for merits review because it was couched as an ineffective assistance of counsel claim. Because the time has passed for Hardman to exhaust this claim, this ground for relief is procedurally defaulted. As discussed above, Hardman does not meet an exception that would allow for the Court to review this issue despite the default. Thus, the Court will not review the merits of Hardman's third ground for relief.

## D. Ground 3: Fourteenth Amendment Violation

In his fourth ground for relief—incorrectly labeled "Ground 3"—Hardman argues he was denied due process under the Fourteenth Amendment when the dental records were used after he was granted a new trial. Respondent asserts that this issue is procedurally defaulted. Again, this Court agrees. Hardman did not exhaust this issue before the state courts. On direct appeal, Hardman argued only that the use of the dental records violated the discovery provisions of Criminal Rule 16. As noted earlier, the inclusion of the issue on reopening does not preserve the claim for merits review because it was couched as an ineffective assistance of counsel claim. Because the time has passed for Hardman to exhaust this claim, this ground for relief is procedurally defaulted. As discussed above, Hardman does not meet an exception that would allow for the Court to review this issue despite the default. Accordingly, Hardman's fourth ground for relief is procedurally defaulted and the Court will not address its merits.

### E.    Ground 3: Sixth Amendment Right to Compulsory Process

In his fifth ground for relief—incorrectly labeled "Ground 3"—Hardman argues that the trial court violated his Sixth Amendment right to compulsory process when it "forced" Hardman to obtain his witness in a short period of time. Hardman raised this issue on appeal. The appellate court rejected this argument, explaining:

> In preparation for the originally assigned trial date, Hardman issued a subpoena to codefendant, Charles Bullard, to compel his testimony at trial. Trial was continued however, and Bullard did not respond to the subpoena (he was apparently on trial in a different case). Hardman, who was representing himself, had a no-contact order with Bullard that he said prevented him from directly contacting Bullard. In response to Hardman's request that the court compel Bullard's presence, the court issued a material witness warrant. Nevertheless, it told Hardman that "I will allow you to make efforts, whatever you need to do to contact Mr. Bullard, to have him here Monday morning. I would encourage you to have him here at 8:30." Hardman contacted Bullard, who said that he "didn't want to necessarily come down here because he has other legal matters going on and he is afraid." Hardman complains that the court, having

signed a material witness warrant, wrongly shifted the duty of executing the warrant onto him.

The Compulsory Process Clause of the Sixth Amendment to the United States Constitution grants a criminal defendant the right to offer the testimony of favorable witnesses and to compel their attendance at trial. The right to compel process is not absolute. "The Sixth Amendment does not by its terms grant to a criminal defendant the right to secure the attendance and testimony of any and all witnesses: it guarantees him compulsory process for obtaining witnesses in his favor." (Emphasis sic.) *United States v. Valenzuela–Bernal*, 458 U.S. 858, 867, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982). "When an accused seeks to establish a violation of the right to present a defense, the accused must show (1) the evidence was material and exculpatory, (2) there was bad faith on the part of the state, and (3) the lack of fundamental fairness." *State v. Abdelhaq*, 8th Dist. Cuyahoga No. 74534, 1999 WL 1067924, 1999 Ohio App. LEXIS 5573, 11 (Nov. 24, 1999), citing *Buie v. Sullivan*, 923 F.2d 10, 12 (2d Cir.1990). In other words, the testimony must plausibly be shown to be material and favorable to the defense. *Id.*, citing *Valenzuela–Bernal* at 867, 102 S.Ct. 3440.

Even assuming that the court erred by failing to compel Bullard's appearance at trial, Hardman has not shown that the error was prejudicial because he did not establish that Bullard's testimony was material and favorable to his defense.

Hardman proffered statements Bullard made in a recorded police interview indicating that the victim had been engaging in acts of prostitution before she met Hardman. Even if true, that fact was immaterial to the question of whether Hardman later compelled the victim to engage in different acts of prostitution. As the state noted at the time, "[t]he fact that [the victim] was prostituted out by another person doesn't mean that she cannot be prostituted out then by this defendant."

Bullard's testimony, as represented by Hardman, would not have been exculpatory, so we find no violation of Hardman's right to compel the attendance of witnesses.

*Ohio v. Hardman*, No. 105810, 2018 WL 2411184, at *3 (Ohio Ct. App. May 24, 2018).

After reviewing the appellate court's decision, this Court concludes that it is consistent with federal law. The Sixth Amendment of the United States Constitution guarantees a defendant

the right "to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI. However, this right is not absolute. The defendant "must at least make some plausible showing of how [the witness's] testimony would have been both material and favorable to his defense." *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982).

Respondent asserts that the appellate court properly determined that Hardman failed to show that Bullard was a material and favorable witness. When the trial court asked Hardman what material testimony Bullard would provide, Hardman stated that Bullard would testify that the victim was already engaged in prostitution before she met Hardman. (ECF No. 10-3, PageID #: 1212). The State responded that the fact that the victim had previously engaged in prostitution was not in dispute and "the fact that she was prostituted out by another person doesn't mean she cannot then be prostituted out by this defendant." (ECF No. 10-3, PageID #: 1212). The Court agrees. The fact that the victim had previously engaged in prostitution, as the State conceded, is neither material nor favorable to the defendant. It does not change the fact that Hardman, after meeting the victim, compelled the victim to again engage in prostitution. Moreover, a detective testified that the victim spent a few nights in a different Motel 6 with a different man prior to her meeting Hardman, making Bullard's testimony cumulative as well as not material. *See Ellis v. Barnhart*, No. 2:06-CV-13772, 2009 U.S. Dist. LEXIS 86738, at *46 (E.D. Mich. Mar. 23, 2009) ("Here, petitioner has made no showing that these witnesses could have offered any favorable, material, and noncumulative evidence in support of his defense."). Hardman's fifth ground for relief is, therefore, without merit.

### F.    Ground 4: Violation of Right to Fair and Impartial Judge

In his sixth ground for relief—incorrectly labeled "Ground 4"—Hardman argues that he is being held in violation of his right to a fair and impartial judge. Respondent asserts that Hardman

procedurally defaulted this claim because he failed to raise it on direct appeal. The Court agrees. Hardman did not bring the issue to the state courts on direct appeal. (ECF No. 10, PageID #: 523). Hardman brought a similar claim when he moved to reopen his case. However, as previously noted, the inclusion of the issue on reopening does not preserve the claim for merits review because it was couched as an ineffective assistance of counsel claim. Because the time has passed for Hardman to exhaust this claim, this ground for relief is procedurally defaulted. Hardman does not argue that he meets the cause and prejudice standard. As discussed above, Hardman does not meet the actual innocence standard. Accordingly, Hardman's fourth ground for relief is procedurally defaulted and the Court will not address its merits.

## VII.    Certificate of Appealability

### A.    Legal Standard

A habeas petitioner may not appeal the denial of his application for a writ of habeas corpus unless a judge issues a certificate of appealability and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."). The "'petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The granting of a certificate of appealability does not require a showing that the appeal would succeed on any claim. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

### B.    Analysis

Hardman's grounds for relief are either meritless or procedurally defaulted. If the Court accepts the foregoing recommendation, then Hardman has not made a substantial showing of a

denial of a constitutional right. He would then not be entitled to a certificate of appealability. Thus, I recommend that the Court not issue Hardman a certificate of appealability.

## VIII.   Recommendation

Hardman has presented only meritless or procedurally defaulted claims. Thus, I recommend that the Court DENY Hardman's petition and not grant him a certificate of appealability.

Dated: January 11, 2022

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

_____

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).